UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALFRED SMITH,

                Plaintiff,

-v-

DETECTIVE RICHARD WARE and
CITY OF NEW YORK,

                Defendants.

17-CV-5152 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Alfred Smith brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging that Defendants the City of New York ("the City") and Detective Richard Ware, who is an officer with the New York City Police Department ("NYPD"), violated his constitutional rights when they falsely arrested and maliciously prosecuted him without probable cause. Smith also brings a state law malicious prosecution claim. Defendants move for summary judgment. For the reasons that follow, the motion is granted.

**I.  Background**

The following facts are drawn primarily from the parties' Local Rule 56.1 statements. They are not subject to genuine dispute unless otherwise noted.

On October 17, 2015, Smith was arrested on a charge of grand larceny. (*See* Dkt. No. 30-9 at 60.) The arrest was effectuated pursuant to an investigation card ("I-card") that had been activated by Detective Ware in March of 2013. (Dkt. No. 37 ¶ 30; Dkt. No. 30-9 at 49.) The charge against Smith was eventually dismissed and the case against him sealed. (Dkt. No. 37 ¶ 35; Dkt. No. 30-11 at 3.) The issuance of the I-card calling for Smith's arrest was the culmination of a years-long investigation into a purported rent-fraud scheme that Ware suspected

1

Smith had perpetrated. The parties' dispute largely boils down to whether Ware had probable cause to call for Smith's arrest at the time Ware issued the I-card.

The record reflects that NYPD's investigation into the rent-fraud scheme at issue in this suit began in September 2011 with the filing of a criminal complaint with NYPD's 33rd Precinct. (Dkt. No. 37 ¶ 1; Dkt. No. 30-1.) This first complainant, David Melton, stated that he had paid $1,800 to a man who identified himself as "Tyrone Johnson" for purposes of renting a room in an apartment on West 173rd Street in Manhattan. (*Id.*) However, when Melton arrived to move into the apartment, he discovered that the keys he had been given did not work. (Dkt. No. 37 ¶ 2.) NYPD's investigation into Melton's allegations revealed that Melton had corresponded with this "Tyrone Johnson" by phone at a specific phone number. (Dkt. No. 37 ¶¶ 5–6.) A subsequent NYPD subpoena of Verizon revealed that the phone number Melton had used to correspond with "Tyrone Johnson" was in fact registered to Smith and at the same West 173rd Street address that Melton had attempted to rent. (Dkt. No. 37 ¶ 9.)

In April 2012, Smith filed a criminal complaint of his own with NYPD's 33rd Precinct, reporting an attempted burglary by some other prospective renters of his West 173rd Street apartment. (Dkt. No. 37 ¶ 11.) The complaint was assigned to Ware. (Dkt. No. 37 ¶ 13.) After Ware apprehended the alleged burglar, the alleged burglar explained that he had broken into Smith's apartment in order to retrieve $1,050 worth of rental payments that the burglar had given to one "Alfred Tyrone Smith," payments the alleged burglar maintained were due to be returned to him. (Dkt. No. 37 ¶ 14.)

The day after Smith filed his complaint, another individual—Zen Hua—filed a separate criminal complaint with the 33rd Precinct, alleging fraud in connection with his attempt to rent the West 173rd Street apartment. (Dkt. No. 37 ¶ 15.) Hua explained that he had paid $2,100 to

2

one "Alfred Tyrone Somity" to rent the apartment, but that he never received keys to the apartment and was unable to receive a refund from "Alfred Tyrone Somity." (Dkt. No. 27 ¶ 16.) After receiving the complaint, Ware interviewed Hua (Dkt. No. 37 ¶ 17), and when Ware showed Hua a photo of Smith, Hua identified Smith as the individual with whom he had met to view the apartment and to whom he had paid the $2,100. (Dkt. No. 37 ¶ 22; Dkt. No. 30-8 ¶ 24; Dkt. No. 30-9 at 19–20.) Hua also presented to Ware copies of rental agreements signed by "Alfred Smith" and checks made out to "Alfred Smith." (Dkt. No. 37 ¶ 21; Dkt. No. 30-10 at 3–4, 6–8.) Smith denies having ever received the checks or having executed the rental agreements, and he asserts that the signatures are forgeries. (Dkt. No. 37 ¶ 21; Dkt. No. 35-4 at 61–62, 64–65.)

In May 2012, Ware interviewed another witness, Trena Barrow, in connection with Hua's complaint. Barrow also claimed to have been defrauded when trying to rent the West 173rd Street apartment. (Dkt. No. 37 ¶¶ 23–26; Dkt. No. 30-9 at 23.) Barrow's account of her experience attempting to rent the apartment bore a number of similarities to Hua's. Perhaps most markedly, when first attempting to let the apartment, both Hua and Barrow initially made contact with a woman who went by "Sara Drokuis" or "Sarah Droukas," and it was this woman who then referred both prospective renters to her alleged boyfriend who eventually defrauded them. (Dkt. No. 37 ¶¶ 18–19, 24–25; Dkt. No. 30-9 at 8, 23.)

Finally, prior to issuing the I-card calling for Smith's arrest, Ware re-interviewed Melton, the initial complainant, and Melton again confirmed the accuracy of his prior account of his attempts to rent the West 173rd Street apartment. (Dkt. No. 37 ¶ 28; Dkt. No. 30-9 at 32.)

Smith concedes that he was in fact a resident of the West 173rd Street apartment that was the site of the alleged scheme throughout the period relevant to this suit. (Dkt. No. 37 ¶ 12.) But

Smith continues to dispute the veracity of the accounts of the various witnesses interviewed by Ware. (*See, e.g.*, Dkt. No. 37 ¶¶ 18, 21–22, 25.) Smith testified at his deposition that he was the victim of an ongoing identity theft spanning the years 2009 through 2014, and he posited that the false use of his name in connection with this identify theft explained his name's association with the rental-fraud scheme and the forgeries of his signatures. (Dkt. No. 35-4 at 64–67, 71.) Finally, Smith acknowledged at his deposition that he had a girlfriend named Sara Droukas throughout the relevant period, that Droukas was a real estate broker, and that Smith would post electronic apartment listings on her behalf and show apartments for her, including his own apartment; but Smith asserts that Droukas was acting alone in her attempts to let the West 173rd Street apartment, and that he only once handled money on Droukas's behalf in connection with her work. (Dkt. No. 35-4 at 64–66, 71–72.)

Smith filed this action on July 7, 2017 (Dkt. No. 1), asserting two causes of action against Defendants Ware and the City: (1) a Section 1983 claim premised on false arrest and malicious prosecution (Dkt. No. 1 ¶¶ 14–27); and (2) a state law malicious prosecution claim (Dkt. No. 1 ¶¶ 28–34). Defendants filed their operative answer on May 30, 2018 (Dkt. No. 23), and discovery closed on November 5, 2018 (Dkt. No. 25). On December 6, 2019, Defendants moved for summary judgment. (Dkt. No. 27.) Defendants' motion has been fully briefed (*see* Dkt. Nos. 29, 36, 38), and the Court is now prepared to rule.

## II.     Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is genuine whenever, considering the record as a whole, a rational jury could find in favor of the non-moving party.

4

*Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). In reviewing a motion for summary judgment, a court must consider the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995). "It is well established that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'" *Curry v. City of Syracuse*, 316 F.3d 324, 333 (2d Cir. 2003) (alteration in original) (quoting *Fischl v. Armitage,* 128 F.3d 50, 55 (2d Cir. 1997)).

### III.  Discussion

Defendants move for summary judgment on a variety of grounds, but ultimately the Court need address only one: that there existed probable cause sufficient to justify Smith's arrest and the prosecution of the grand larceny charge against him.[1] Because the Court concludes that there is no genuine dispute of fact that such probable cause existed, all of Smith's claims fail as a matter of law.

#### A.  False Arrest

"A [Section] 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Shaheed v. City of New York*, 287 F. Supp. 3d 438, 448 (S.D.N.Y. 2018) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). "[U]nder New York law, a plaintiff bringing a claim for false arrest or false imprisonment must show that '(1) the defendant intended to confine [the plaintiff], (2) the

---

[1] Smith was arrested and charged with Grand Larceny in the Third Degree (Dkt. No. 30-11 at 2, 4), which can be established under New York law where a defendant steals property that has a value over $3,000, N.Y. Penal Law § 155.35.

5

plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Id.* (second alteration in original) (quoting *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995)). Among the circumstances where confinement is privileged is a lawful arrest effectuated on the basis of probable cause. *Id.* Accordingly, "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under [Section] 1983." *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (quoting *Weyant*, 101 F.3d at 852) (internal quotation marks omitted).

It is well established that "[a]n officer has probable cause to arrest when in possession of facts sufficient to warrant a prudent person to believe that the suspect had committed or was committing an offense." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997). "An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer*, 63 F.3d at 119. And "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti*, 124 F.3d at 128. There is no "duty on the arresting officer to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest." *Jocks v. Tavernier*, 316 F.3d 128, 135–36 (2d Cir. 2003). Finally, "[w]hen determining whether probable cause exists[,] courts must consider those facts *available to the officer* at the time of the arrest and immediately before it." *Shaheed*, 287 F. Supp. 3d at 448 (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)).

6

"On summary judgment, the existence of probable cause or arguable probable cause may be determined as a matter of law where 'there is no dispute as to the pertinent events and the knowledge of the officers.'" *Id.* at 449 (quoting *Weyant*, 101 F.3d at 852). Such is the case here. Before Ware issued the I-card calling for Smith's arrest, he interviewed at least three witnesses, and he received signed complaints from two of them; each of these witnesses described a similar rental fraud scheme centered around Smith's apartment and involving various permutations of Smith's name,[2] as well as his girlfriend's. (*See* Dkt. No. 37 ¶¶ 7, 15, 18, 25.) Ware also had before him evidence that one of these witnesses corresponded with the perpetrator of the scheme at a phone number registered in Smith's name and to his address. (Dkt. No. 37 ¶¶ 5, 8–10.) Another witness, Hua, provided Ware with fraudulent leasing documents that appeared to have been signed by Smith along with checks associated with the scheme that had been issued to and endorsed by Smith. (Dkt. No. 37 ¶ 21; Dkt. No. 30-10 at 3–4, 6–8.) And finally, and perhaps dispositively, Hua identified for Ware a photo of Smith as the perpetrator of the fraud. (Dkt. No. 37 ¶ 22; Dkt. No. 30-9 at 19–20.) Indeed, Ware has also produced an affidavit from Hua corroborating that Hua did make such a photo identification at the time he was interviewed by Ware. (Dkt. No. 30-8 ¶ 24.)

This evidence, unchallenged by Smith, is more than sufficient to establish Ware's probable cause to issue an I-card to arrest Smith. Where "[an]n arresting officer [is] advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, [the officer] has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer*, 63 F.3d at 119. Here, Ware had testimony from three such witnesses, two of whom filed criminal complaints with the

---

[2] At his deposition, Smith testified that his middle name is Tyrone. (Dkt. No. 35-4 at 71.)

NYPD, and each of whom offered accounts of the scheme that corroborated the others' stories. Smith does nothing to establish that Ware had any reason to doubt the veracity of any of these witnesses, let alone all three of them. These witnesses' testimony provided Ware with probable cause to arrest Smith.

In opposing Defendants' motion, Smith primarily emphasizes that he has been a victim of identity theft, and Ware's investigation into Smith's NYPD records "might" have produced a report of Smith's prior complaint regarding this identity theft. (Dkt. No. 36 at 4.) But even crediting as true Smith's testimony that his identity has been stolen in the past and that a false user of his identity perpetrated the rent-fraud scheme at issue, this testimony cannot establish that Ware lacked probable cause to arrest Smith. This is because whether or not Ware "might" have investigated Smith's possible innocence further, there is no "duty on the arresting officer to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest." *Jocks*, 316 F.3d at 135–36. Thus whether or not reports of Smith's identity theft existed in the NYPD's records (Smith has produced none in the summary judgment record), Ware did not lack probable cause to call for arrest Smith's prior to having searched for them.

Finally, even if Ware *had* investigated and discovered the possibility of another fraudster having coopted Smith's identity, Ware's probable cause to arrest Smith himself would have remained unassailed on the basis of one still-undisputed fact: A witness identified a *photo* of Smith himself as the individual who had perpetrated the fraud. (Dkt. No. 37 ¶ 22; Dkt. No. 30-8 ¶ 24; Dkt. No. 30-9 at 19–20.) Thus even discounting the testimony of the other witnesses who implicated Smith only on the basis of the use of his name, documents bearing his name, his phone number, or his address (something this Court could in any event not properly do), the

account of the remaining witness—who filed a criminal complaint referencing these same categories of evidence *and* identified photo of Smith as the perpetrator—remains by itself sufficient to resolve Smith's Section 1983 claim premised on false arrest.

In sum, because the undisputed facts in the record before the Court establish that there was probable cause to arrest Smith on the grand larceny charge, his Section 1983 false arrest claims must be dismissed.

### B. Malicious Prosecution

Smith also asserts malicious prosecution claims against both Defendants pursuant to Section 1983 and New York state law. (Dkt. No. 1 ¶¶ 14–34.) When "a plaintiff presents a claim of malicious prosecution under [Section] 1983, the court must engage in two inquiries: whether the defendant's conduct was tortious; and whether the plaintiff's injuries were caused by the deprivation of liberty guaranteed by the Fourth Amendment." *Singer*, 63 F.3d at 116. Thus "[t]o state a Section 1983 claim for malicious prosecution, the plaintiff must allege the four elements of malicious prosecution under New York state law and a 'sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights.'" *Manbeck v. Micka*, 640 F. Supp. 2d 351, 369 (S.D.N.Y. 2009) (quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000)). Where a plaintiff "[can]not establish one of the elements of his malicious prosecution claim" under state law, a district court may dismiss the Section 1983 claim without deciding whether the alleged malicious prosecution amounted to a violation of the plaintiff's constitutional rights. *Singer*, 63 F.3d at 116. Accordingly, the Court may resolve its inquiry into both Smith's Section 1983 and state law malicious prosecution claims by examining whether Smith has produced facts sufficient to go to a jury on the elements of common law malicious prosecution.

Under New York law, "[t]o prevail on a claim of malicious prosecution, four elements must be shown: (1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice and, (4) the matter terminated in plaintiff's favor." *Ricciuti*, 124 F.3d at 130. Absent intervening circumstances, probable cause sufficient to justify an arrest is also treated by courts as probable cause sufficient to justify a prosecution. *See Jocks*, 316 F.3d at 136 ("[Defendant's] only significant argument is that he had probable cause to commence the proceeding. This is essentially the same as the argument on the false arrest claim, and we hold [that the same outcome is warranted for both claims]."); *Shaheed*, 287 F. Supp. 3d at 452 ("[W]hen a court finds there was probable cause for an arrest, and in the absence of some indication that the authorities became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest, no claim for malicious prosecution may lie." (quoting *Johnson v. City of Mount Vernon*, No. 10 Civ. 7006, 2012 WL 4466618, at *5 (S.D.N.Y. Sept. 18, 2012)) (collecting cases).

Here, the same undisputed facts that establish probable cause for Smith's arrest also resolve Smith's malicious prosecution claims. *See supra* Section III.A. In brief, that undisputed evidence includes: the testimony of three witnesses describing a similar fraud scheme centered around Smith's name and address; fraudulent leasing documents bearing Smith's name; checks from the scheme made out to Smith; testimony from multiple witnesses describing the involvement of Smith's conceded girlfriend in the scheme; and one witness's photo identification of Smith as the perpetrator of the scheme. These undisputed facts establish that there was probable cause to prosecute Smith for his role in the alleged rental-fraud scheme.

Because Smith cannot establish an essential element of a New York state law malicious prosecution claim, namely that the prosecution against him was initiated without probable cause, his malicious prosecution claims premised on state law and Section 1983 both fail as a matter of law. Defendants' motion for summary judgment on these claims is thus granted.[3]

## IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 23 and to close this case.

SO ORDERED.

Dated: June 26, 2019
New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

[3] To the extent Defendants contest whether the City of New York is a properly named defendant for Smith's claims (Dkt. No. 29 at 9), the Court declines to separately address those contentions, having concluded that Smith's claims in any event fail on the merits. *Cf. Shaheed*, 287 F. Supp. 3d at 451 ("[B]ecause plaintiffs have not made out a claim against any of the officers individually, plaintiffs' claims against the City fail in turn."). Finally, with respect to Ware's qualified immunity arguments (Dkt. No. 29 at 7–8), the disposition of a Section 1983 claim on grounds "that there was probable cause for the arrest . . . subsumes the issue of immunity," *Singer*, 63 F.3d at 118, and the Court thus declines to separately address those contentions as well.